# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEMETRIA CLARE LUNNY,

                                        Plaintiff,

    v.

                                                               6:14-CV-425

MRS. LUCILE SOLDATO,                                     (GLS/ATB)
Comm'r "Employee" of the Dep't
of Social Services,

                                        Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEMETRIA CLARE LUNNY
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a complaint, filed on a form for civil rights actions pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Demetria Clare Lunny. (Dkt. Nos. 1, 2).

**I.   IFP Application**

Although plaintiff has not properly completed the IFP form, other documents submitted by plaintiff in this case show that plaintiff is indigent. Thus, the court will assume that she meets the financial criteria for IFP.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

In her civil rights complaint, brought pursuant to 42 U.S.C. § 1983, plaintiff

names as a defendant, Lucille Soldato, the Commissioner of the Department of Social Services ("DSS") in Utica, New York. Plaintiff claims that, on an unspecified date,[1] she went to DSS to advise a "Representative" of plaintiff's financial status. (Compl. at CM/ECF p.2). Plaintiff alleges that she was unable to obtain funds from her "spouse," due to an order of protection filed against him. Plaintiff states that she complied with all the DSS requirements for "assistance," but that she was "taken out of DSS" on an unspecified date because she continued to ask for assistance after she was diagnosed with Bipolar disorder. (*Id.*)

Plaintiff claims that, defendant Soldato "beliddled [sic]" plaintiff in front of a room full of people and told her that she was the commissioner, and that DSS could not help plaintiff by adding funds to her account because the money was already going toward her rent. (*Id.*) Plaintiff states that Ms. Tianya Smith[2] informed the plaintiff that once DSS obtained her diagnosis, she would receive money. (Compl. at 3). Plaintiff alleges that when she told defendant Soldato that Ms. Smith had advised plaintiff about

---

[1] Plaintiff has left a "blank" space in the sentence in which she states that she went to DSS to discuss her financial condition. It appears that plaintiff wished to put a date in the complaint, but has neglected to do so. The complaint reads: "On _____ I came into DSS and advise [sic] Repesentative about my financial status." (Compl. at CM/ECF p. 2).

[2] Ms. Smith has not been named in the caption of the complaint as a defendant. Later in the complaint, plaintiff states: "Please note Mrs. Tianya Smith [(Domestic Violence Liaison)] + Mrs. Lucille Soldato are <u>equally responsible</u> for my ongoing mental out burst [sic] . . . ." (Compl. at CM/ECF p. 5). The court notes that plaintiff's exhibits contain many documents signed or co-signed by Tianya Smith, who plaintiff states is the "Domestic Violence Liaison," and who appears to be a Social Worker for DSS and has been dealing with plaintiff and her paperwork. (*See e.g.* Dkt. No. 1-1 at 44, 46).

the money, Ms. Soldato became irate and told plaintiff "that is not her[3] responsibility," and then advised plaintiff's landlord that "they" would not be receiving any other money. (*Id.*) Plaintiff claims that this violates her "Disability Rights" and her "Civil Rights." (*Id.*)

Plaintiff complains bitterly about the way that she has been treated by DSS, stating that she has given DSS every "documentation," but that she has been misunderstood, undermined, disrespected, and belittled in front of numerous individuals in the DSS waiting room by other representatives of the DSS. (Compl. at 4). She states that she is a "woman of all nations" and should be treated in a "human and kind" manner. (Compl. at 5). Plaintiff also alleges that defendant Soldato and Mrs. Smith were responsible for plaintiff's ongoing mental outburst and excessive crying. However, "thanks to officers" who escorted plaintiff to the psychiatric ward, she was able to receive medical attention so that she may "face society in a sound state of mind." (*Id.*)

Plaintiff seeks substantial monetary relief for "pain and suffering," stress, and "unable to get my point across because of disability." (Compl. at 7). She also seeks relief because the defendant has belittled and embarrassed her. Finally she seems to state that this Human Services employee showed "total detachment" and was not

---

[3] The court assumes that "her responsibility" refers to Ms. Smith. Plaintiff may be trying to say that defendant Soldato was explaining to plaintiff that Ms. Smith had no right to inform plaintiff that she would be getting money as soon as DSS received plaintiff's diagnosis. The complaint is very disjointed, and it is difficult to determine to whom plaintiff may be referring in that sentence. The court has interpreted the sentence in the way that it makes the most sense.

willing to assist with plaintiff's case.[4] (*Id.*)

Plaintiff has attached sixty-seven pages of exhibits to her complaint. (Dkt. No. 1-1). Plaintiff may be attempting to show that she submitted the proper papers to DSS to prove her financial status, among other things. The exhibits also contain a great deal of medical information relating to the plaintiff.[5] Plaintiff's exhibits also include an "Appointment Confirmation" with the Social Security Administration in conjunction with a future application for Supplemental Security Income ("SSI"). (Dkt. No. 1-1 at 16-17). The date of plaintiff's appointment with Social Security was May 2, 2014. (*Id.*)

## III. Section 1983

### A. Legal Standards

Plaintiff has filed this case, using a form for civil rights actions under 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

### B. Application

#### 1. Harassment

In this case, there is no question that defendant Soldato, as the Commissioner of the DSS in Utica, acts under color of state law. However, to the extent that plaintiff is

---

[4] Plaintiff's complaint is very difficult to read, both due to plaintiff's handwriting and due to grammatical errors in plaintiff's sentences. Thus, the court is interpreting plaintiff's statements as broadly as possible.

[5] Because of privacy issues, the court has limited access to these documents.

suing defendant Soldato because she belittled her, harassed her, misunderstood her, or treated her badly in front of others, plaintiff's allegations do not rise to the level of a constitutional claim. Verbal harassment, and even threats, no matter how unprofessional, do not rise to the level of constitutional violations. *Holland v. Morgenstern*, No. 12-CV-4870, 2013 WL 2237550 (E.D.N.Y. May 20, 2013) (citing *Jean–Laurent v. Wilkerson*, 438 F. Supp.2d 318, 324–25 (S.D.N.Y. 2006) (claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) (threats and verbal harassment without physical injury or damage not cognizable in claim filed under section 1983); *Fairchild, Arabatzis & Smith, Inc. v. Sackhheim*, 451 F. Supp. 1189, 1192 (S.D.N.Y.1978) ("screaming" and "demanding" did not rise to the level of constitutional violation)). *See also Weinstein v. Garden City Union Free School Dist.*, No. CV 11-2509, 2013 WL 55077153, at *16 (E.D.N.Y. Sept. 30, 2013) (citing inter alia *Cole v. Fischer,* 379 F. App'x 40, 43 (2d Cir. 2010); *Curcio v. Roosevelt Union Free School Dist.*, No. 10-CV-5612, 2012 WL 3646935, at *18 (E.D.N.Y. Aug. 22, 2012)).

Plaintiff is essentially upset with the way she was treated by defendant at DSS, and seeks substantial monetary damages against defendant Soldato. Even though plaintiff states that she is well aware of the "time frame" and that "clients [and] consumers will receive assistance in the order [that] intakes are approved," (Compl. at 4), plaintiff claims that defendant Soldato and Ms. Smith were responsible for plaintiff's "mental out burst" and excessive crying. It appears that plaintiff claims that

defendant Soldato treated plaintiff so badly that plaintiff had a "mental out burst," but that everything turned out well because some officers escorted plaintiff to the psychiatric[6] ward, where she was able to get some "medical attention," resulting in plaintiff's ability to "face society in a sound state of mind." (Compl. at 4).

It is unclear whether plaintiff's mental out burst occurred while she was at DSS, but it appears that if it did, she was afforded medical assistance and suffered no injury due to her out burst. In any event, plaintiff does not cite any constitutional violation committed by defendant Soldato relating to her alleged mistreatment of plaintiff. Thus, any attempt by plaintiff to bring a section 1983 action based on verbal harassment or mistreatment may be dismissed with prejudice.

### 2. Other Possible Claims

Plaintiff's other statements are very vague. Plaintiff's exhibits show that she was applying for "expedited" money, but that the money was not forthcoming even though plaintiff had submitted all the appropriate paperwork. Plaintiff has also submitted a blank form for Supplemental Nutrition Assistance Program ("SNAP") benefits and a blank form, entitled "Landlord Statement." (Dkt. No. 1-1 at 61-64). The court will attempt to determine whether plaintiff has stated any constitutional claim with respect to the benefits that she appears to be attempting to obtain at the DSS.

The Supreme Court has held that constitutionally protected property rights are determined by reference to "'an independent source such as state law – rules or

---

[6] Plaintiff spells this "psyhic" ward, but the court assumes that she means psychiatric ward. Once again, the court has interpreted plaintiff's sentence in a way that makes sense.

understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Brown v. City of Barre, Vt.*, 878 F. Supp. 2d 469, 482 (D. Vt. 2012) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)) (other citations omitted). Once the substantive interest is determined using state law, then federal constitutional law determines whether that interest rises to the level of a "'legitimate claim of entitlement.'" *Id.* (quoting *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

The Second Circuit has held that applicants for benefits may have a property interest in the receipt of public welfare entitlements, which is protected by due process.[7] *Kapps v. Wing*, 404 F.3d 105, 115 (2d Cir. 2005). In *Kapps* the court held that the due process analysis begins with whether the state statute confers an entitlement on an applicant as a matter of law, were she able to meet the requirements for eligibility. *Id.* at 117. If so, then the plaintiff would have a property interest, and she would have to be afforded procedural protections under the Due Process Clause to demonstrate her eligibility. *Id.* The court ultimately held that the plaintiffs[8] had a legitimate claim of entitlement to the benefits sought, given the "mandatory statutory and regulatory framework" and the absence of "discretionary factors" to determine benefit eligibility. *Id.* at 114-18.

---

[7] The alleged entitlement at issue in *Kapps* was New York's Home Energy Assistance Program ("HEAP") benefits. 404 F.3d at 109.

[8] *Kapps* was brought as a class action, and to the extent that they obtained relief, plaintiffs obtained declaratory and injunctive relief on their due process claim. 404 F.3c at 127. The Second Circuit affirmed the district court's holding with respect to the due process claim, but reversed on another claim based on a separate statute not relevant to this case. *Id.*

8

SNAP benefits are a form of "property" protected by the due process clause. *Davis v. Proud*, No. 13-CV-1663, 2014 WL 905576, at *15 (E.D.N.Y. Mar. 5, 2014) (citations omitted). However, plaintiff in this case has not identified any due process violation she believes was committed by defendant Soldato. (Dkt. No. 1-1 at 66-67) ("Needs Assessment Form" dated 4/15/2014). Other than submitting a blank SNAP benefits form as part of a 67-page exhibit package, and stating that she gave DSS everything that was needed to determine her financial eligibility,[9] plaintiff has not really indicated for what type of benefits she was applying or what due process rights she alleges were violated. She has focused more on the rude and embarrassing treatment she received from defendant. As stated above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 555). Thus, any due process claim under section 1983 may be dismissed without prejudice.

## IV. "Disability Act/Rights"

Plaintiff does not cite any other statute upon which she bases her action. However, because plaintiff is pro se, the court must interpret plaintiff's complaint to raise the strongest arguments that it suggests. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Thus, this court will search the vague allegations in the complaint to determine if there is any claim stated by plaintiff.

---

[9] This financial eligibility issue may have nothing to do with the blank SNAP benefits application. The court is left only to speculate upon plaintiff's attempt at making a claim.

9

Plaintiff states that the defendant's actions violated plaintiff's Disability Rights, without any explanation of what those rights might be. (Compl. at 3). The ADA provides for protection against discrimination based upon disability. 42 U.S.C. § 12101 *et seq*. Title I of the ADA governs employment actions; Title II covers public services and programs; and Title III governs public accommodations. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 29 U.S.C. § 794(a)). These two standards are almost identical. The Rehabilitation Act has the additional requirement that the program or activity in question must receive federal funding. *Id.*

However, the disability must be the "substantial cause" of the exclusion. *Henrietta v. Bloomberg*, 331 F.3d 261, 291 (2d Cir. 2003). The fact that plaintiff "has" a disability does not automatically turn all defendant's conduct into disability discrimination. *See Vaigasi v. Management Corp.*, No. 11 Civ. 5088, 2014 WL 1259616, at *7 (S.D.N.Y. Mar. 24, 2014) (citations omitted) (conclusory allegations are insufficient to state an ADA claim). In *Henrietta*, the court held that there must have been "something different" about the way that plaintiff was treated because of her

disability, or plaintiff must demonstrate that a disability "makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities." 331 F.3d at 277.

Although plaintiff in this case claims that she was misunderstood and treated badly, she was not denied the ability to apply for benefits because of her disability. While it may be true that it is more difficult to negotiate the process of applying for benefits when one has a disability,[10] plaintiff seems to take issue with the way she was treated, not with her ability to apply. In fact, plaintiff states that she submitted all the appropriate documents, including the doctor's report detailing her impairment. It appears that she claims that a favorable decision regarding her benefits would be based on the fact that she had a "diagnosis," not that she was discriminated against because of her disability. In *Leocata ex rel. Gillbride v. Wilson-Coker*, 343 F. Supp. 2d 144, 156 (D. Conn. 2004), the court held that when a plaintiff failed to allege that defendants denied her Medicaid benefits due to her disability and failed to allege any discriminatory animus by defendants against persons with dementia, she failed "to meet the standard required by the Second Circuit for a valid claim under the ADA."[11]

Thus, in this case, without more, this court cannot find that plaintiff's complaint

---

[10] Plaintiff states that she is bipolar, but that she now is taking medication that allows her to face society in a sound state of mind. (Compl. at 5).

[11] The court also notes that plaintiff in this case is asking only for monetary relief. In order to obtain damages under the ADA or RA, the plaintiff must show that the defendant's violations were "intentional" discrimination. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009). Plaintiff in this case states that the defendant "human services worker" showed total detachment" and was "unable to be empathetic" to individuals with disabilities. It is questionable whether such an allegations would qualify as intentional discrimination, but this court makes no such finding.

states a plausible claim for the violation of "Disability Rights" under either the ADA or RA. Plaintiff's complaint must be dismissed.

## V. <u>Opportunity to Amend</u>

### A. **Legal Standard**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. **Application**

Although plaintiff will never succeed in suing defendant Soldato for being rude, belittling, or even yelling at plaintiff, she could state a claim for disability discrimination if she could show that somehow she was denied the opportunity to apply or was denied benefits because of her disability. Because plaintiff's complaint is so vague that this court cannot determine what she is attempting to allege, and there is no explanation of why her "Disability Rights" were violated, the court has recommended dismissal, but the court will recommend dismissal without prejudice with respect to re-pleading only a disability discrimination claim. The court will also recommended dismissal without prejudice to the extent that plaintiff would be able to assert some procedural due process claim as stated above.[12]

**WHEREFORE**, based on the findings above, it is

---

[12] This court makes no finding regarding who the appropriate defendant might be if plaintiff does attempt to amend her complaint.

12

**ORDERED**, that plaintiff's renewed motion to proceed IFP (Dkt. No. 4) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED SUA SPONTE WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) with respect to plaintiff's claims of verbal harassment or mistreatment by defendant or any other DSS employee, and it is

**RECOMMENDED**, that this action be **DISMISSED SUA SPONTE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND TO STATE A CLAIM FOR A DUE PROCESS or DISABILITY DISCRIMINATION** as outlined above, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 16, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge